JACOB E. CURTIS, PLAINTIFF, v. THE COUNTY OF BUTLER.

On the 9th of February, 1853, the Legislature of Pennsylvania passed an act entitled "An act to incorporate the Northwestern Railroad Company."

By the seventh section, the counties through parts of which the railroad may pass were authorized to subscribe to the capital stock of the company, and to make payments on such terms and in such manner as may be agreed upon by the company and proper county; and the subscription of the counties was to be held to be valid when made by a majority of its commissioners.

The county of Butler was one of the counties through which the railroad was to pass, and coupon bonds were issued, signed by two of the three commissioners of the county, in payment of a subscription of two hundred and fifty thousand dollars on the part of the county of Butler.

Other parts of the act required certain other things to be done, which were complied with.

The proper construction of this act is, that power was given in the act and by the agreement of subscription and terms of payment, to the commissioners of

Butler county, to make the instruments upon which the suit is brought, and to bind the county to pay them.

The bonds upon which suit is brought, being signed by two out of the three commissioners, are binding upon the county of Butler.

THIS case came up on a certificate of division in opinion between the judges of the Circuit Court of the United States for the western district of Pennsylvania.

In order to show the state of the case as it was presented to the Circuit Court the entire record will be inserted, which was as follows:

Jacob E. Curtis, a citizen of the State of Virginia, *v.* the County of Butler, a corporation composed of citizens of Pennsylvania.

*Summons—Debt—Issued October 20th,* 1857, *returnable the first Monday of November next.*

This was an action of debt brought on forty-nine coupons claimed to have been attached to certain bonds alleged to have been issued by the county of Butler to the Northwestern Railroad Company, in payment of an alleged subscription of the said county to the capital stock of said company. The declaration is in debt on the bonds and coupons, and the defendant pleaded *nil debit*.

The cause came on to be tried before the Honorable R. C. Grier and the Honorable Wilson McCandless, judges of the said court, at Pittsburg, at May term, 1859.

The plaintiff, to sustain the action on his part, gave in evidence the seventh section of the act of the General Assembly of Pennsylvania, approved the 9th February, 1853, entitled "An act to incorporate the Northwestern Railroad Company," as follows: "That the counties through parts of which said railroad may pass shall be, and they are hereby, severally authorized to subscribe to the capital stock of said railroad company, and to make payments on such terms and in such manner as may be agreed upon by the said company and the proper county: provided, that the amount of subscription by any county shall not exceed ten per cent. of the assessed valuation thereof, and that before any such subscription is made, the amount thereof shall be fixed and determined by one grand jury of the proper county, and approved by the same. Upon

the report of such grand jury being filed, the county commissioners may carry the same into effect by making, in the name of the county, the subscription so directed by said grand jury: provided, that whenever bonds of the respective counties are given in payment of subscriptions, the same shall not be sold by said railroad company at less than par value, and no bonds shall be in less amounts than one hundred dollars; and such bonds shall not be subject to taxation until the clear profits of said railroad shall amount to six per cent. on the cost thereof, and that all subscriptions made or to be made in the name of any county shall be held and deemed valid, if made by a majority of the commissioners of the respective counties."

The plaintiff also gave in evidence bond No. 1, as follows:

| 1,000. | United States of America. | 1,000. |
|---|---|---|
| No. 1. | County of Butler, Pennsylvania. | No. 1. |

Bonds issued for stock in the Northwestern Railroad Company; faith of the county and stock of the company pledged.

Know all men by these presents that the county of Butler, in the Commonwealth of Pennsylvania, is indebted to the Northwestern Railroad Company in the full and just sum of one thousand dollars; which sum of money said county agrees and promises to pay twenty years after the date hereof, to the said Northwestern Railroad Company, or bearer, with interest at the rate of six per cent. per annum, payable semi-annually on the first days of January and July, at the office of the Pennsylvania Railroad Company in the city of Philadelphia, upon the delivery of the coupons severally hereto annexed; for which payments of principal and interest well and truly to be made, the faith and credit and property of the said county of Butler are hereby solemnly pledged, under authority of an act of the Assembly of this Commonwealth, entitled "An act to incorporate the Northwestern Railroad Company," which said act was approved the ninth day of February, A. D. eighteen hundred and fifty-three.

In testimony whereof, and pursuant to said act of the Legislature of Pennsylvania, and resolutions of the county commissioners in their official capacity, passed the 31st day of

*Curtis v. County of Butler.*

March, 1853, the commissioners of said county have signed, and the clerk of the said commissioners has countersigned these presents, and have hereto caused the seal of said county to be affixed, this first day of July, A. D. one thousand eight hundred and fifty-four.

[Seal of county.]

JAMES MITCHELL,
JOHN MILLER,
*Commissioners of Butler County.*

THOS. ROBINSON,
*Clerk of Commissioners.*

The plaintiff, further to maintain the action, gave in evidence a certified copy from the records of the court of quarter sessions of Butler county, No. 16, March sessions, 1853, as follows:

Presentment of the grand jury recommending a subscription of two hundred and fifty thousand dollars to the capital stock of the Northwestern Railroad Company on the part of the county of Butler.

And now, to wit, March 29, 1853, petition filed setting forth as follows, to wit:

*To the honorable the Grand Jury and Commissioners of Butler county:*

GENTLEMEN: The undersigned, commissioners of the Northwestern Railroad Company, request of the county of Butler a subscription of two hundred and fifty thousand dollars to the capital stock of the Northwestern Railroad Company.

(Signed by the commissioners named in the act.)

And now, to wit, 29th March, 1853, presentment of the grand jury, as follows, to wit.

GRAND-JURY ROOM, *March*, 1853.
BUTLER COUNTY.

*To the honorable the Judges of the Court of Quarter Sessions in and for the county of Butler:*

The grand jury, to whom was referred the application of the Northwestern Railroad Company for the subscription of two hundred and fifty thousand dollars to the capital stock on the

part of the county of Butler, beg leave to report that they have given the subject the calm consideration that the importance would seem to demand; that they, the said grand jury, do hereby fix and determine, according to the provisions of the act of Assembly, the sum of two hundred and fifty thousand dollars, the amount that the commissioners of Butler county may subscribe on behalf of the said county; and they earnestly request that they may make a subscription of that amount to the capital stock of the said company. The grand inquest further requests the honorable court to direct the finding to be duly filed, together with the application of the company, and that a certified copy of the same may be laid before the commissioners of Butler county for their consideration. All of which is respectfully submitted.

(Signed by the Grand Jury.)

The plaintiff, further to maintain the issue on his part, gave in evidence 21 coupons of $30, and 28 coupons of $15, in form as follows, to wit:

County of Butler. Warrant No. —, for thirty dollars, being for six months' interest on bond No. —, payable on the first day of July, A. D. 1857, at the office of the Pennsylvania Railroad Company, in the city of Philadelphia.

$30.                    THOMAS ROBINSON, *Clerk.*

The plaintiff further offered testimony, tending to prove that the said coupons were signed by Thomas Robinson, and that he was the clerk of the commissioners at the date of the bonds, and it was admitted that the county of Butler was one of the counties through which said railroad was intended to pass, and if ever made would pass, and the plaintiff rested.

The defendant, to maintain the issue on his part, then gave in evidence the following subscription and agreement between the commissioners of the county of Butler and the Northwestern Railroad Company, as to the terms and manner of payment, to wit:

By authority of an act of the General Assembly of the Commonwealth of Pennsylvania, passed the ninth day of

February, A. D. one thousand-eight hundred and fifty-three, entitled "An act to incorporate the Northwestern Railroad Company," and by virtue of the action of the grand jury of the county of Butler, had at the March sessions, A. D. 1853, at the court of said county, fixing and determining the amount of subscription to be made to the said Northwestern Railroad Company by said county of Butler, we, the undersigned, commissioners of said county, do hereby subscribe, for and in the name of the county of Butler, to the capital stock of the Northwestern Railroad Company, the sum of two hundred and fifty thousand dollars, being five thousand shares of said capital stock.

It is understood, that whenever the amount of this subscription is required from the county of Butler by the said company, it is to be paid in the bonds of this county, to be given in sums of not less than one thousand dollars each, payable in twenty years after date, or such other time after date as may be agreed upon by the commissioners of Butler county and the said railroad company; the interest on said bonds to be paid semi-annually, and said interest to be paid by said railroad company until such time as the Northwestern railroad is completed.

In testimony whereof we have hereunto set our hands and affixed the seal of the said county of Butler, this 18th day of August, A. D. one thousand eight hundred and fifty-three.

    [Seal of the County.]      THOMAS WELSH,
                         JAMES MITCHELL,
                         JOHN MILLER,
Attest:                            *Commissioners.*
    JOHN SULLIVAN, *Clerk.*

Resolution passed by the board of directors of the Northwestern Railroad Company, August 16, 1853:

"On motion of Mr. Cunningham and S. A. Purviance, it was—

"*Resolved,* That the president is hereby requested to procure the subscription to the company from the counties of Lawrence and Butler, as proposed to be subscribed by them—

to wit: two hundred thousand dollars by Lawrence county, and two hundred and fifty thousand dollars by Butler county—upon the following terms, to wit: that the subscriptions be paid in the bonds of the respective counties of one thousand dollars each, payable in — years after date, with interest payable semi-annually; the interest to be paid by the company until the road is completed.

"Attest: **WILLIAM HASLETT,**
*Secretary."*

The defendant further gave in evidence, tending to show that these bonds had been disposed of by the railroad company at less than their par value, and that the plaintiff had notice of the agreement with the county as to the payment of interest by the company, &c., and of notice to the plaintiff to show how he came by these instruments.

Whereupon the defendant prayed the said court to instruct the jury, that no power is given in the said act of Assembly of the 9th February, 1853, or by the said agreement of subscription and terms of payment, to the commissioners of the county of Butler, to make the instruments upon which the suit is brought, and thereby bind the said county to pay them; and that if any power was given to issue bonds payable to bearer, with coupons attached, it could not be exercised by two out of the three commissioners of the said county; and these bonds, having been signed by but two of the said commissioners, are not binding on the said county.

Upon which prayers the said judges were divided in opinion; whereupon the said defendant requested the said judges to certify, under their hands and seals, and cause to be certified under the seal of the said court, their division of opinion upon the said prayers of the said defendant, to the Supreme Court of the United States of America; which is accordingly done, and the clerk of the said Circuit Court is hereby ordered to certify the same, under the seal of our said court, to the said Supreme Court, at its next session.

In testimony whereof we have hereunto set our hands and

seals, this 25th day of May, A. D. one thousand eight hundred and fifty-nine.

R. C. GRIER,                [SEAL.]
WILSON McCANDLESS, [SEAL.]

The case was argued in this court by *Mr. Stanton* for the plaintiff, and *Mr. Black* for the defendants.

*Mr. Stanton,* in order to show that the Legislature had power to pass the act, referred to the decisions of the Supreme Court of the State, in 9 Harris, 147; 8 Casey, 218; and 8 Casey, 144, which related to this very act.

Assuming the power to exist, he then made the following points:

1. It is admitted that Butler county comes within the scope of the act; it is one of "the counties through parts of which the said railroad may pass."

2. It is admitted that this county, through its officers, "the commissioners, or a majority of them," is authorized to subscribe to the capital stock of the railroad company, and "make payment on such terms and in such manner as may be agreed upon by said company and the county." It is, however, claimed that such a great and special power could not be delegated by such vague and indeterminate language as that used in this act; that the power "to make payment on such terms and in such manner as may be agreed upon by the company and the proper county" does not necessarily imply that such securities as bonds with coupons attached may be given, and that to infer such a power would be highly dangerous.

An examination of the terms and phraseology of the act, however, clearly shows that the power to issue bonds was intended to be conveyed. In this very section, it is provided that "whenever bonds of the respective counties are given in payment of subscriptions," &c., and that "no bonds shall be given less than one hundred dollars," &c. Here we have a legislative construction of the act, showing that the authority to issue bonds in the name of the county was intended to be conferred. In construing our acts of legislation, a considera-

tion of the provisos is often of vital importance; they often contain, instead of exceptions, or restrictions, the principal features of the statute, which without them would be inoperative or senseless.

In the actions of all the parties concerned we find a similar construction put upon the act. Nobody ever supposed that the county could make payment of her subscription in any other manner than by her credit pledged in her bonds. Until the convenience of the plea was felt, no one ever dreamed of questioning the power of the commissioners to make these bonds. The same astuteness that we now find employed in the endeavor to repudiate these obligations, was then engaged in advising and procuring their execution. But the defendants' own construction of the law in making these obligations will now be applied by courts of justice in enforcing their fulfillment.

By a reference to the case of the county of Lawrence against the Northwestern Railroad Company, reported in the thirty-second volume of the Pennsylvania State Reports, at page 144, it will be seen that this matter has been before the Supreme Court of the State. That was a proceeding by the county of Lawrence, which stands in precisely the same category with the county of Butler, against the Northwestern Railroad Company, asking for an injunction against the further negotiation of the bonds of the county by the company, for certain reasons which it is needless here to state. The Supreme Court granted the injunction, on terms implying and recognising the validity of the bonds before that time negotiated by the company.

Of the "terms and manner of payment agreed upon by the said company and the proper county," the best, and to affect the plaintiff, the only evidence, is to be found in the bonds themselves. Hence, the agreement of the 18th August, 1853, put in evidence by the defendants, was superseded by the agreement of the 1st July, 1854, evidenced by the bonds; and any provision of the earlier agreement inconsistent with the terms of the bonds cannot avail as a defence against a *bona fide* bearer of the bonds.

II. But suppose a fair construction of the terms of the act of 9th February, 1853, shows authority in the county and its proper officers to issue the instruments given in evidence—a second question arises under the facts as stated in the certificate of division of opinion, namely, whether bonds signed by two of the three commissioners would be binding.

It has not been seriously contended that the commissioners were not the proper officers to execute the bonds. The corporate powers of the county are by law exercised by the commissioners.

     Act 15th April, 1834, Purdon's Digest, 176.

But it is claimed that the execution should have been by the entire board of commissioners, consisting of three persons; that such an extraordinary power should be construed strictly.

Now, by the 19th section of the act of April, 1834, it is enacted as follows: "Two of the commissioners aforesaid shall form a board for the transaction of business, and, when convened in pursuance of notice or according to adjournment, shall be competent to perform all and singular the duties appertaining to the office of county commissioners."

     See Purdon's Digest, 176.

This point was considered by the Supreme Court of Pennsylvania, in the case of the Commissioners of Allegheny county against Lecky, 6 S. and R., page 166—a case that arose before the act of 1834 was passed—and it was unanimously held that all powers conferred upon the commissioners might be legally executed by two, without the concurrence of the third. And to the same effect is the case of Cooper and Grove *v.* Lampeter Township.

     8 Watts's Reports, 128.

     5 Binney's Reports, 481.

It may be further remarked, that signing the bonds was not a duty of a deliberative nature. It was merely carrying into effect the previous deliberations of the board and their agreement with the company.

Of *Mr. Black's* argument the reporter has no notes.

Mr. Justice WAYNE delivered the opinion of the court.

This case has been sent to us upon a certificate of division upon two points, which occurred between the judges upon the trial of it in the court below: 1. Had the commissioners of Butler county legal authority to issue the bonds given in evidence? 2. If they had, was such power or authority well exercised by two out of the three commissioners of the said county, or were the bonds signed by two of them binding?

The act under which the bonds were issued was passed 9th February, 1853. The first section enumerates the persons by name who were to become commissioners to open books, receive subscriptions of stock, and to organize a company by the name, style, and title, of the Northwestern Railroad Company, with all the powers, and subject to all the duties, restrictions, and regulations, prescribed by an act regulating railroad companies, approved the 19th of February, 1849, "so far as the same are not allowed and supplied by the provisions of this act."

By the second section of the act, the capital stock of the company was to be divided into twenty thousand shares, of fifty dollars each, with the privilege to be increased, if the exigencies of the company shall require it, to any sum not exceeding two millions of dollars, as the president and directors of said company may deem expedient. By the third section, the company have the right to build and construct a railroad from some point on the Pennsylvania or Allegheny railroad, at or west of Johnstown, by the way of Butler, to the Pennsylvania and Ohio State line, at some point on the western boundary line of Lawrence county, &c., &c., to connect with any railroad now or which might be thereafter constructed at either end, or at any intermediate point on the line or route thereof. For doing this, the company was authorized to borrow money to an amount not exceeding the capital stock of the company, upon bonds to be issued by it whenever the president and directors might deem it expedient to do so. The rate of interest upon the bonds was not to exceed seven per cent., and they were to be convertible into the stock of the company, whenever the holders of it and the

company might agree to have that done. The sixth section of the act we need not speak of, as it relates to matters unconnected with the questions certified, or from which there is not any impeachment of the correct action of the company.

By the seventh section, the counties through parts of which the railroad may pass were authorized to subscribe to the capital stock of the company, "and *to make payments on such terms and in such manner as may be agreed upon by the company and proper county.*" But the amount of the subscription of any county was not allowed to exceed ten per centum of the assessed valuation thereof, (for taxes,) and before any subscription could be made for any county, the amount of each was to be determined and approved by a grand jury of the county. Upon the report of a grand jury being filed, the county commissioners were to carry it into effect, accordingly. Then, whenever bonds of the respective counties were given in payment of subscriptions, the commissioners were prohibited from selling them at less than at par; and such bonds the State exempted from taxation until the clear profit on the business of the railroad amounted to six per cent. on the cost thereof; and it was declared that the subscription of the counties was to be held to be valid when made by a *majority* of its commissioners. With this analysis of the act, under which the bonds sued upon were issued, we proceed to consider the points submitted to us.

In the first place, after a careful examination of the act to which this act was made subordinate, we do not find that anything was done by the commissioners inconsistent with it, or bearing upon the points certified.

We think that the county commissioners had authority from the Legislature to execute the bonds, and to pledge the faith, credit, and property of the county, to pay them. Authority was given by the seventh section of the charter. It declares that the county shall have power to subscribe to the capital stock of the railroad company, and to make payment in such manner and upon such terms as may be agreed upon between the county and the company.

It cannot be denied that this was an authority to the county

to make a contract of subscription, and that it contemplates a payment for it prospectively "by bonds which, when made in the name of any county, were to be held valid, if made by a majority of the commissioners of the respective counties." The power to subscribe, the manner of payment, the limitation upon the amount of subscription, the mode of carrying that out through the intervention of a grand jury's approval and report, the allowance of bonds to be given in payment, the restriction of the same upon the railroad company to which they were to be transferred, not to sell the bonds at less than par, the hindrance upon the issue of bonds of less than one hundred dollars, the exemption of them from taxation upon a contingency until the clear profits of the railroad shall amount to six per cent. upon the cost of it, are significant of what was intended. All of those particulars in this section of the statute are to be considered together in the construction of it.

No one questions that the Legislature, then, had the power to incorporate such companies, and to allow the counties of the State to become interested in them upon the faith of county securities, for the transportation of persons and things in all of the vehicles used for commerce and the carrying trade, either by water, or by land upon ordinary artificial roads. And that associations of persons might be incorporated for the construction of the latter, either by money already subscribed, or by money to be raised or borrowed by certificates of indebtedness, with certificates of interest attached, separable from the former, for the payment of interest, payable at particular times.

The objection now, as we understand it, is not that the Legislature had not such a power. But it is said, in the exercise of it, that the railroad company, and the counties through which the road might be constructed, had mistaken the terms upon which the counties might subscribe to the capital of the railroad company, as to the manner for the payment of the subscription; in other words, that the counties in issuing bonds with coupons had mistaken the special authority given to them by the seventh section of the act, and had made a different contract, which could not be judicially enforced.

That section is as follows: "That the counties through parts of which said railroad may pass shall be authorized to subscribe to the capital stock of the railroad company, and to make payment on such terms and in such manner as may be agreed upon by said company and the proper county: provided, that the amount of subscription by said county shall not exceed ten per cent. of the assessed valuation thereof, and that before any such subscription shall be made, that the amount thereof shall be fixed and determined by one grand jury of the proper county, and approved by the same; and that upon the report of such grand jury being filed, the county commissioners may carry the same into effect *by making in the name of the county* the subscription directed by the grand jury: provided, that whenever the bonds of the respective counties are given in payment of subscriptions, that the same shall not be sold by the railroad company at less than par value, and no bonds shall be in less amount than one hundred dollars, and that such bonds shall not be subject to taxation until the clear profits of said railroad company shall amount to six per cent. upon the cost thereof; and that all subscriptions made or to be made in the name of any county shall be held and deemed valid if made by a *majority* of the commissioners of the respective counties."

Now, we freely subscribe to the rule that neither privileges, powers, nor authorities, can pass by an act of incorporation, unless they be given in unambiguous words, and that an act giving special privileges must be construed strictly. That in such a case, where a sentence is capable of having two distinct meanings, that a construction must be given to it most favorable to the public. But in applying these principles to this case, it must be done with reference to the subject-matter contemplated by the Legislature as a whole, and not allow its manifested intention and design to be defeated by denying to the counties the only means of paying their subscription, by which the main object could be accomplished.

Why was it that the Legislature, in drawing the section, directed that the subscriptions of the counties should be made upon terms and in manner as the railroad and the counties

might agree upon; that it limited the amount of subscription upon an assessed valuation of the property of the county; that it contemplated a taxation contingently upon the bonds of the counties, respectively, that they were to be given in payment of subscriptions, unless it had been its clear intention that the subscriptions were to be paid for by county bonds, when both company and county should make such a contract?

This, in our view, is not a case of ambiguity in the power given, but one of as clear designation as could have been expressed. Nor was it a case in which the Legislature imposed a public burden. It was no more than giving to the people of the county a right to tax themselves for an anticipated advantage to arise from an expenditure of their own money in the construction of a railroad. It was the concern of the county; the same as it would have been if the county had been legislatively empowered to tax themselves to clear out a river for a better navigation, or for the cutting of a canal. Whether the allowance for the issue of bonds for either of those purposes will be judicious depends upon the subject and the regulations which the Legislature may impose for their execution.

In our best judgment, applied as it has been to the 7th section of the act to incorporate the Northwestern Railroad Company, in connection with a full consideration of the rules for the construction of the powers of corporations, we have been unable to find anything in the 7th section equivocal or doubtful as to the power given to the counties to make and to pay for their subscriptions to the railroad company, and nothing wrong as to that company having received them according to its charter.

We therefore answer to the first point certified to this court, "that power was given in the act of the 9th February, 1853, and by the agreement of subscription and terms of payment, to the commissioners of Butler county, to make the instruments upon which the suit is brought, and to bind the county to pay them."

We will now proceed to the second point certified to this court: and if any power was given to issue bonds payable to

bearer, with coupons attached, it could not be exercised by two out of the three commissioners of the said county; and that these bonds having been signed by but two of the said commissioners are not binding on the county.

We have examined the acts relating to who are designated to exercise the corporate powers of the county. By the act of the 15th April, 1834, the commissioners are to do so; and it is now claimed, as there are three, that all of them should have signed the bonds to make them binding upon the county. But by the 19th section of the act, it is declared that two of the Commissioners shall form a board for the transaction of business, and when convened in pursuance of notice or according to adjournment, shall be competent to perform all and singular the duties appertaining to the office of county commissioners.   Purdon's Digest, 176.

Before the act of 1834 was passed, it was held in the case of the commissioners of Allegheny county against Lecky, 6 S. and R., page 166, that all powers conferred upon the commissioners might be legally executed by two, without the concurrence of the third.   The same ruling will be found in Cooper and Grove v. Lampter Reansbey, 8 Watts, 128; 5 Binney's Reports, 481.  But why cite authorities, when the act in terms makes the bonds valid if made by a *majority of the commissioners* of the respective counties?

We therefore answer the second point certified, that the bonds upon which suit is brought, being signed by two out of the three commissioners, are binding upon the county of Butler.