Sneed, J.,
delivered the opinion of the court.
This controversy involves questions of vast magnitude to the parties and the public, and we must acknowledge our obligations to the learned counsel on both sides, for the great ability with which they have argued these novel and difficult issues, upon which an adjudication is demanded. The plaintiff is an incorporated railroad company, chartered by the State of Kentucky in 1850, for so much of its road as lies in that State, and by the State of Tennessee in 1851, ' for so much thereof as lies in the latter State, and has been for many years operating its original main trunk of railroad one hundred and eighty-five miles,
*776 connecting the cities of Louisville and Nashville, and owns and operates about six hundred and five miles of road in the two states aforesaid; and, as lessee, operates and controls some two hundred and fifty miles of road in this State. About thirty-three miles of the plaintiff's road lie in the county of Sumner, in this State, and the same has been assessed for taxes for 1873 and 1874, on behalf of the State and county, by 'the defendant Austin, as County Judge of said county of Sumner. This litigation involves the validity of said assessment, and embraces two causes originating by petition- for certiorari and supersedeas in the Circuit Court of Sumner county, in one of which, the defendant Austin, as County Judge, and the State of Tennessee, are defendants, and in the other, the said Austin and the Cumberland & Ohio E. E. Co., are defendants. The case first named involves the validity of the assessment on behalf of the State and county, and the second upon the same grounds as that on behalf of the county, with the additional defence, that so much of the latter assessment as seeks to exact a tax in liquidation of certain county bonds, issued in aid of said Cumberland & Ohio E. E. Co., is illegal and void for want of lawful authority in the County Court of said county, to subscribe stock in said company and issue said bonds. In both cases, the writ of supersedeas was awarded, restraining the tax collector from enforcing the collection of the taxes until further notice, and in both cases answers were filed; in the first, by defendant Austin, and in the second, by the defendant Austin and the Cumberland & Ohio *777 R. R. Co. The two cases were heard by the Judge of the Circuit Court upon the petitions, answers, exhibits, and proofs, who rendered judgments dismissing the petitions in both cases, and from the judgments the plaintiff appeals.
"Waiving for the present, the consideration of the main question involved in these two causes, we proceed, first, to dispose of the question, whether the plaintiff 'can, in this proceeding, successfully resist the payment of its lawful quota of taxation in liquidation of the said county subscription to the Cumberland & Ohio R. R. — assuming for the argument that the assessments complained of are, upon all other grounds, valid and lawful.
The Cumberland & Ohio R. R. Co. was incorporated by the State of Kentucky on the 24th of February, 1869. The General Assembly of this State, on the 10th of January, 1870, passed an act stating the fact of the aforesaid charter, and that the objects thereof was the construction of a railroad from the Ohio river, through certain counties in Kentucky, to a point on the boundary line between the States of Tennessee and Kentucky, about due north from the town of Murfreesboro, in Tennessee, with a view of connecting with the Southern system of railways converging at Nashville, Tennessee; and enacting that for the purpose of carrying out said enterprise in the State of Tennessee, and to form the connection aforesaid, the powers and privileges of said Cumberland & Ohio R. R., as granted by the State of Kentucky, be granted and extended from the point afore *778 said, on the boundary line aforesaid, to the town of Gallatin, in Sumner county, in the State of Tennessee, and from thence to the city of Nashville, in said State; and said Cumberland & Ohio R. R. Co., for the purpose of building and constructing said railroad, were granted all the powers, rights, and privileges, which were conferred upon the Louisville & Nashville R. R. Co., by its charter originally granted and amended by the Legislature of the State of Tennessee. Certain named gentlemen, thirteen in number, and among whom were J. C. Rodemer, J. J. Turner and W. S. Munday, were appointed commissioners to receive subscriptions to the capital stock of said Cumberland & Ohio R. R. Co., and “they may cause books to be opened for that purpose, at such times and places as they may see proper.”
By section 30 of said act, “each county and incorporated town, through which the said road may be located, in the State of Tennessee, may take stock in said road, as provided by the Code of Tennessee. On the 1st day of May, 1871, the commissioners aforesaid, appeared before the County Court, composed of the defendant Austin, County Judge, and twenty-five of the Justices of said county, and presented an application on the part of said company, to submit the questions to the voters of said county, whether the said county of Sumner would subscribe stock in said company to the amount of $300,000, in aid of said enterprise, upon the terms and conditions prescribed by law, and issue its bonds for the amount, bearing six per cent, interest, payable annually, and said bonds *779 to be payable in not less than ten, nor more than thirty years from the issuance of the same. This application was granted, the record showing that a majority of the Justices of the county voted for it. The entry of record contains the following recital: “And it appearing that said road has been surveyed by a competent engineer, and substantially located by designating the terminii of said road, and a number of points in the same, and the general direction and course of the road have been designated, and an estimate of the grading, embankment and masonry, made by the engineer, under oath, and filed with the application ; now in pursuance of the law,” etc. The entry then proceeds to order an election, according to the formulary prescribed in the statute.
At the July Term following, the vote of the county was reported, from which it appeared that the total number of votes cast was 2,861, of which, 1,781 were for the subscription, and 1,080 against it, the majority for subscription being 701. The subscription was thus carried, and the same was duly accepted by the company. It does not appear that said enterprise has been abandoned, but the same is in process of completion; and it is stated that up to the present time, some $220,000 of said subscription has been evidenced by the bonds of the county, and that much of the same has been negotiated in the discharge of contracts and obligations, and entered into by the company in the prosecution of its enterprises, and the county has received its certificates of stock therefor. The people of Sumner county have, since the maturity of the cou *780 pons, been regularly taxed to meet the interest, and the interest has been regularly paid. The plaintiff as a tax payer of the county, has heretofore paid a small assessment on its property, on this account, without protest. The county has its stock regularly represented in the operations of the company, and a special commission of citizens has been constituted by the County Court, under heavy bonds, whose duty it is to receive these railroad taxes and discharge the coupons as they may be presented. It is said that the subscription aforesaid and bonds so issued are void and unlawful, and that no tax could be lawfully predicated upon the same; and divers grounds are urged in argument, which we will notice as briefly as possible.
We have recently had occasion to say in a case where the bondholders were themselves parties to the litigation, that “after the solemn obligations of the county have been negotiated and thrown .upon the commerce of the country, into the hands of bona fide holders, who, so far from having notice of any supposed illegality, were encouraged by the county itself, through a series of years to give them implicit credit, it would require a very grave departure from legislative restrictions to justify the courts in exonerating the county ”: State, ex rel. Ross v. Anderson county, MS., Knoxville, 1874. In the case now before us, however, the bondholders, who are the parties most vitally interested, are not before us, and we are asked in a collateral proceeding, to annul the action of a court of competent jurisdiction, at the suit of a single tax payer, because certain things required to be done were *781 not done, when the record assumes on its face, that every material prerequisite of the statute has been complied with. The statute provides, “ that before such application can be made, the entire line of the road in which stock is proposed to be taken, shall be surveyed by a competent engineer, and substantially located, by designating the terminii, and approximating the general direction of the road, and an estimate of the grading, embankment, and masonry, made by the engineer, under oath, and filed with the application.” The record of the County Court assumes that all of this was done, and though the certificate of the engineer, exhibited in the record, does not fill the exact requirements of the statute, yet it is avered in the answer of the Cumberland & Ohio R. R. Co., that it was the same enterprise under a different name rhat was before the county of Sumner in 1852, for a subscription under the name of the Cincinnati, Danville & ■ Nashville R. R. — that the road was carefully surveyed by an eminent engineer, and a careful estimate made of the cost of the road; that the field notes, profiles and estimates, fell into the hands of the Cumberland & Ohio R. R. Co. That the route was again carefully traced and examined by the engineers of the Cincinnati Southern R. R., the original profile and notes having been furnished said engineer by the said Cumberland & Ohio R. R. Co. That these notes, profiles, and estimates, together with a map, were before the County Court, furnishing all the facts required by the Code; that they were filed, but subsequently withdrawn to be used at other points; and that the *782 Cumberland & Ohio R. R. Co., m 1871, and previous to its application in May of that year, had made careful instrumental surveys of the road, and had fixed its main terminii, and the general points on the road. In view of the recitals of the record, that all these requirements of the law had been strictly complied with, we are to presume that the record speaks the truth, and it must be held to prevail against a collateral attack like this.
It is further urged, that the application of the County Court was unlawfully made by the commissioners aforesaid, as the company was then organized, and the law required the application to be made by the board of directors.
If we concede that the plaintiff’s construction of the statute be correct, we could not hold that a departure so slight and immaterial from the terms of the statute, should vitiate the important action of the court “ and the people ” which followed it. But we think the statute which allows the application to be made by the commissioners or board of directors of the company, if organized, admits of no such construction; and it is immaterial from which body the applcation may come. The vital and important matter is the action of the court and the people, which is to follow it. Nor are we prepared to hold after a subscription of stock has been made upon a vote of the people, and the bonds have been negotiated, as in this case, that the whole proceeding is void, because the consent of a majority of the Justices was not obtained at a Quarterly Term; the fact appearing that *783 a majority of the Justices of the county were actually present and voting on the question at the May Term, 1871, instead of a Quarterly Term. The old act upon the subject provided, that the election ■ might be ordered by the “County Court”; and it was held by this Court in the case of the Louisville & Nashville R. R. Co. v. Davidson oounty, et al., 1 Sneed, 638, that where a new power is vested in the County Court, or a new duty devolved upon it, and no particular number of Justices is specified, any number which may constitute a legal court can perform it. And in the same case, the Court holds that the duties imposed by the statutes upon the court in these matters of railroad subscription, are ministerial merely, and not judicial. That the intention evidently was to commit the whole matter to the people, and provide that their edict in relation to it, should be subject to no intermediate obstruction, but be fully and fairly carried out by the use of the agencies designated. Thé Legislature could have appointed any other county officers to perform these acts, as well as the Justices of a County Court. The duties required were all ministerial: 1 Sneed, 681. But the Legislature of 1871, thought it wiser and safer to commit this important trust to a majority of the Justices of the county, instead of the three functionaries constituting the quorum court; and hence, the act of 1871, c. 50, provides, that the consent of a majority of the Justices of the Peace of the County, at a Quarterly Term of the County Court, should first be obtained.
,We think as their duties are ministerial merely, *784 and not judicial, that the spirit and purpose of the enactment, was to ’secure absolutely the consent of a majority of the Justices of the county; and that the requirement that it, should be so obtained at a Quarterly Term, was directory, and intended the better to secure that consent, inasmuch as under the constitution of the court, a majority of said Justices were not usually in attendance upon the Quorum Terms of the Court. As held by this Court, the Justices were in such matters the mere instrumentalities of the people, upon' whom the whole responsibility of self-taxation was thrown, and they were the mere agents by whom the popular edict upon the matter was to be registered and enforced. The county of Sumner at the present stage of the proceedings, could not well complain of an irregularity which it has ratified and adopted, by its subsequent action; and the plaintiff can not stand in any better condition.
But it is said that this subscription of stock was unlawful and void, because it was not made upon the requisite popular vote. The constitution of 1870 provides that the credit of no county, city or town shall be given or loaned to, or in aid of, any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election. Nor shall any county, city or town become a stockholder with others in any company, association or corporation, except upon a like election and the assent of a like majority. But the county of Sumner and others are *785 specially excepted out of this provision, so far that the assent of a majority of the qualified voters of either of said counties voting on the question shall be sufficient, when the credit of such county is given or loaned to any person, association or corporation: Art. 2, s. 29.
We have seen that the subscription in this case was carried by a majority of the voters voting in the election, and we have seen also that the- charter of the Cumberland & Ohio R. R. Co. had conferred upon the county of Sumner the power to subscribe for stock in said road under the provisions of the Code. These provisions of the Code, requiring a majority of the voters of the county, weré repealed by the act of 1871, c. 50, in accordance with the provisions of the Constitution of 1870, above cited. The question is, whether these provisions, as to the number of votes required, apply in this case to a matter of subscription of stock, or a lending or giving of credit, so far as the excepted county of Sumner is concerned. The literal phraseology would seem to distinguish between a lending or giving of credit, and a subscription of stock; and yet, to give it such a construction, would involve the absurdity of permitting the county to give or lend its credit to a railroad upon the assent of a majority of the voters voting in the election, and to require a three-fourths’ vote in subscribing for stock; or, in other words, the county may tax itself and donate its taxes as a gratuity to a corporation upon a bare majority of the voters voting in the election, and upon a proposition *786 to subscribe stock, by which the county may be indemnified for its outlay, a majority of three-fourths is required. . We can not assent to such a construction. “Constitutions,” said Mr. Story, “are instruments of a practical nature, founded on the common business of life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, they must be supposed to read them, with the help of common sense ”: Story on the Const., § 451. They must be interpreted in the light of practical sense, and enforced according to their manifest intention. The general provision is, that the credit of no city, town or county shall be given, or loaned to, or in aid of, any person, company, association or corporation, except upon an election to be first held by the qualified voters, and the assent of three-fourths of the votes cast at said election. Nor shall any county, city or town become a stockholder with others in any company, association or corporation, except upon a like election and the assent of a like majority. Now we find certain exceptions to this provision in favor of the counties of Sumner and others, and a new county authorized to be established out of fractions of Sumner, Macon and Smith counties, so far that the assent of a majority of the qualified voters of either, voting on the question, shall be sufficient: but with the words added: “ When the credit of such county is given' or loaned to any person, association or corporation.” And in looking to the journal of the convention, we find the amendment to the section under *787 consideration, by which the new county to be established out of fractions of Sumner, Macon and Smith, was excepted from its provisions; and this amendment expressly includes the taking of stock, as well as the giving or loaning of credit to or in aid of any person, company or corporation. This amendment was adopted by the convention as a part of said sec. 29 of the Constitution, but by some singular misprision. in the final engrossment of the instrument, the words, “become a stockholder,” were left out in the excepting clause. Taking this amendment and the manifest intention of the framers of the instrument as a guide and interpreter, we are constrained -so to construe the section as to apply its general provisions, as to “subscribing stock,” to the excepted -counties. Some of these were contemplating a subscription to some railroad enterprise, already projected through them on the faith of such promised subscription, as Sumner county was, and this exception was incorporated in the Constitution with a view to ensure it. Why a larger vote should be required for a subscription, than for a giving of credit, is simply incomprehensible. It can not be the meaning of the instrument, and manifestly is not, when the whole section and its purposes are considered. In the construction of the organic law, as in the construction of statutes, the real intention, when ascertained, will prevail over the literal sense of terms. “Thus,” .say this court in regard to the construction of statutes, “a thing may be within the letter of the statute, and yet not within the statute, unless it be within the *788 intention of the maker ” : 2 Sneed, 88; 1 Wheat, 326; 20 Wend., 561; 1 Kent, 462; 15 John., 380; 14 Mass., 92; Dwarris on Stat., 691, 725. We can not, therefore, hold this proceeding void upon this ground, without doing violence to these familiar rules of construction.
As to other mere irregularities and departures from the precise formularies prescribed by statute, it is sufficient to say, that under our owq, adjudications and those of many of the courts of this country, including those of the highest tribunal in the Union, it is now too late for the county of Sumner or its tax-payers to resist the payment .of this subscription on that ground. We will not encumber this opinion with a detail of the multiform phases in which these questions have been presented and adjudged, but must content ourselves with' a mere reference to some of the cases, where they may be found, and ' where the various questions raised in' this branch . of the case are discussed: 7 Ohio, 327-401; 34 Ill., 421; Ross v. Anderson Co., MS., Knoxville, 1874; 24 Ill., 9; 5 Wall., 90; 25 Penn., 156; Ang. & Ames Corp., 237; 1 Penning (N. J.), 347; 1 Halst., 115; 3 Halst., 191; 19 John., 284; 3 Hum., 305; 11 Hum., 47; 2 Swan, 504; 21 How., 429, 539; 6 Ellis & Bl., 327; 24 How., 435; 1 Black, 386; 2 Black, 722; 1 Wall., 83-175; 3 Wall., 294; 9 Wall., 478; 1 Wall., 211-385; 3 Wall., 327, 654; 4 Wall., 270, 535; 5 Wall., 772; 6 Wall., 166, 210; 11 Wall., 136; 7 Wall., 82; 14 Wall., 282; 13 Wall., 298; 15 Wall., 356; 6 Wall., 6, 644; 19 Wall., 84; 3 Hill., 263; 4 Mass., 45; 10 Wall., *789 645; Abb. Dig. Corp., 800-806; 7 Wright, 391; 34 Ind., 140; 16 Kansas, 300; 1 Col., 455; Smith et al. v. Clark . Co., 1 Cent. L. J., 5.
We. conclude that, the plaintiff can not resist the tax assessed against it by the county of Sumner, to discharge the county’s indebtedness on account of the subscription of stock in the, Cumberland & Ohio. R. R. Co., upon any of the grounds assumed in the petition or in the argument; and that said subscription being a valid. debt. against the county, the, levy of taxes for its extinguishment was lawful and proper.
And this brings us to the consideration of the question, whether the assessment for county taxes was, in the form and manner in which it was done, a valid and lawful assessment.
■ The Constitution of this State, and the law passed in pursuance thereof, provide that all property, real) personal and mixed, shall be taxed, subject to certain specified exemptions; and that all property shall be taxed according., to its value, that value to be ascertained in such manner as the Legislature may direct, so that the taxes shall be equal and uniform throughout the State; and no one species of property, from which a tax may be collected, shall be taxed higher than any other species of property of the same value: Const. 1870, art. 2, § 28.
Before the assessment now in controversy, the plaintiff had been taxed, not as a railroad, but as the owner of eight acres per mile upon which its thirty-three miles of road in Sumner was built, aggregating 241 acres, and on its depot-houses and other *790 real estate in the county, of the aggregate value of $8,435; and this property was assessed as other real estate in the county — the road-bed as farming lands were assessed, and the buildings and other realty as other like property of like value; the aggregate amdunt' of taxes assessed against the plaintiff on all its railroad and other property in said county being about $105.00 for the year 1873, which was paid.
The laws of this State have never established any basis of' assessment for railroad property as such. The general provision applicable to every species of property alike, was, at the time of the assessment now in controversy, that all real property shall be assessed at its marlcet value, on a credit of one and two yearsf deducting fifteen per cent.; and all- personal property at the same value at which it ought to be appraised in payment of a just debt in cash from a solvent debtor: Act 1873, c. 118, s. 4. The 25th section of the act just cited provides that, “should it, at any time after the assessments have been made, come to> the knowledge of the chairman or judge of the county court, the clerk of the county court, the county trustee, sheriff, or tax-collector, of any county in the State, that any person, company, firm or corporation-in said county have not been assessed as contemplated' by said act, or have been assessed on an inadequate amount, it shall be the duty of said chairman or judge, clerk, trustee, sheriff, or tax-collector to cite such person, company, firm or corporation, their agent, attorney or representative, to appear before them for the purpose of being assessed according to law; and *791 said chairman or judge, clerk, trustee, sheriff, or tax-collector, are hereby authorized and empowered to make the proper assessment against such person, company, firm or corporation.” Under the provisions of this section, after the plaintiff had been assessed, as above stated, for the year 1873, the defendant Austin, as County Judge of Sumner county, summoned the agent of the plaintiff before him, to show cause why a new and different assessment should not be had for 1874, and why said company should not be assessed for taxes for 1874, upon their road-bed, rolling stock, depots and other property in the county of Sumner.The defendant Austin states that said company appeared before him by its attorney; that the consideration of said matter was postponed from time to time, at the request of said attorney; and that, finally, no satisfactory reason appearing why the assessment should not be made, he proceeded to make the same upon the basis, as stated in his own words, as follows: “I estimated the length of the company’s road in Sumner county at thirty-five miles, and valued each of said miles at a fraction over twenty-seven thousand dollars, which was formed from an estimate upon -the whole length of the road, and the whole amount of stock, to find how much stock each mile represented. I then multiplied this amount by thirty-five, the number of miles in the county. I then made an estimate of this amount, counting the stock to be worth forty-five cents to the dollar, the market price thereof on the 10th of January, 1874. This gave the amount on which the assessment was made, which was $500,- *792 000. I also caused a similar notice to be served on said company to show cause why they should not be taxed for the year 1873. No answer or appearance having been made, I assessed said company for taxes for the year 1873, estimating the value of their property in this county for the year 1873 at $675,000, the amount for 1873 being made greater than the amount for'1874, on account of the stock being worth more in 1873 than in .1874. I caused such assessment to be entered on the tax-books for collection. The taxes for - Sumner county for 1873 were assessed by the county court at its April term, 1873.”
It is complained in the petition of the plaintiff that the assessments of the county judge, now in controversy, were made upon a valuation of the entire road-bed, rolling stock, equipments, engine-houses and machine-shops of petitioner, together with the special uses and purposes to which they were all put and applied, the profits arising from them as a railroad and appurtenances, and also the depot-grounds and lands already assessed as before stated; that a part of said valuation of $675,000 was assessed as the pretended proportional actual value of the road-bed, rolling stock and depot grounds in Sumner county, as compared with the value of the entire road, from which, however, the taxes before assessed against said depot grounds separately, and which had been paid, as stated above, were directed to be deducted. And it' is insisted that said road-bed, if liable to taxation as such, must be assessed in the several districts where it is located, and not elsewhere, and not in gross. *793 That it should be taxed and assessed according - to its value as aforementioned, and not in. the mode-adopted. That the assessment and- taxation of the capital, property, road-bed, and rolling stock to -petitioners corporation, and the taxation, also, of the shares of stock therein to the stockholders, is unequal, unconstitutional and void; and that the road-bed, rolling stock, capital and property of petitioner’s corporation are not subject or liable to assessment and taxation, and the same is prohibited by law. The last proposition— that the road-bed, rolling stock, capital and property of the plaintiff is not subject to assessment and- taxation — is predicated, we presume, upon the- 8th section of the act of 1873, c. 118, which is in the words following: “No tax shall hereafter be assessed upon the capital of any bank or banking association, or any other joint stock company organized under the authority of this State or the United States, but the stockholders of such bank or banking association, or other corporation, shall be assessed and taxed on the value of their shares of stock therein; said shares shall be included in the valuation of personal property of such stockholders in the assessment of state, county or municipal taxes, at the place, town, ward or district where such bank or banking association or other corporation is located, and not elsewhere, whether said stockholders reside- in said place, town, ward on district or not; but not at a greater rate than is assessed upon other moneyed capital in the hands of individuals in this State.”
Aside from the effect of the familiar principles of *794 law, that the authority to tax is never to be taken to be relinquished except upon ■ the most clear and unequivocal expression of the legislative will, we are satisfied from the very terms of this statute, that it was not intended to embrace railroad corporations: 16 How., 435; 4 Pet., 561; 11 Pet., 545. This view might be enforced by a mere criticism upon- the literal force of the words employed, but the matter, as it seems to us, is too plain for argument. It is not to be supposed that the State would surrender so splendid a source of its revenues, except in terms that could not be misunderstood.
We are not called upon in this case to construe the statute in question otherwise than as it is supposed to embrace railroad corporations within its provisions, nor to pronounce upon the abstract question of the compatibility of such a statute with that provision of the constitution which requires that “all property shall be taxed,” save such as may be exempted from the general burthen by the express terms of the instrument itself. The provision that exempts certain property from taxation, would seem to be one of those which executes itself; and when the lawmaking power undertakes to vouchsafe exemptions, it must look alone to the organic law for its authority to do so. Whatever is the subject of ownership, is actually owned, and is appreciable in value, is property in the sense of the constitution; and “all property shall be taxed,” is the imperative, and not merely potential or directory injunction, which would seem to embrace every conceivable species of property as sub *795 ject to the burthen, except such as are specially exempt, or may be exempted at the will of the Legislature.
The four elements of property in all joint stock companies are, the capital stock ■ the corporate property ; the franchise of the corporation, and the indi-' vidual stock of the shareholders. Whether either of these may be exempted under the peculiar provisions of our constitution, may be matter of grave doubt— not necessary, however, to be decided in this case. The sole question before us on the provisions of the eighth section of the act is, whether it was intended to embrace railroad corporations, which we hold, upon its obvious import, was not intended. We take it, therefore, that all the property of a railroad corporation is taxable in this State; but the question recurs, has the plaintiff in this case been assessed according to the constitution and the law ?
It is said that the plaintiff’s property should have been assessed in the several districts in which it lies, and such is the requirement of the law in regard to taxable property in general. But the assessment in this case falls directly within the exception specified by the statute, when in the opinion of the County Judge an inadequate assessment had been made, in which event, it was the special duty of that officer to re-assess the property. We see no objection to the exercise of this power by that officer, and the assessment of railroad property, as such, lying in several civil districts, certainly does not fall within the reason-of the general law requiring the property of’the citi *796 zen to be assessed in the district in which it lies; as the sole enquiry of the assessor would be, what is the value of the property, and this could as well be ascertained in the town of Gallatin, as in the several districts through which the railroad runs. Even in the case of an assessment by the district assessor, he is not absolutely required personally to inspect each lot, tract or parcel of land, but he may otherwise “obtain satisfactory information in regard to the value thereof”: Act 1873, c. 118, s. 30.
In this case, we are. to presume that the assessor has availed himself of the best sources of information, and that. he has arrived at the approximate value of that part of the plaintiff’s road. which lies in Sumner county. An exact mathematical certainty in assessing the value of property for taxation is not attainable. It was an observation of Chancellor Kent, that a just and perfect system of taxation, is yet a desideratum in civil government: 2 Comm., 332. But we do not understand that this assessment is objected to as excessive in valuation. We think, on the other hand, that it is so susceptible of demonstration, that if the basis of assessment be lawful, the plaintiff has no right to complain of the valuation. In the absence of any specific legislative directions, fixing a basis for the assessment of railroad property, we must throw ourselves upon the provisions of the Constitution and the general law, that all property must be taxed according to its value; and that real estate must be assessed at its market value, on a credit sale of one and two years. If that portion of the plaintiff’s railroad lying in *797 Sumner county, while in full operation,- were levied upon and sold upon a credit of one and two years, it would be sold and bought as a railroad, an integral part of a great and profitable line of freight and travel, between the two cities of Louisville and Nashville, and not as so many acres of ground upon which its easement lies, with its appurtenant houses and lands. If a tract of land be bought and sold in the same way, its capacity for production and advantages of market, would be essential elements and incidents of valuation. A railroad, with its necessary fixtures and appliances, is real estate, and taxable as such, and must be taxed upon its value as a railroad, and that value .must be ascertained by its actual, and not its speculative profits, or its mere capacity for productiveness; as it must be taxed at its value when assessed, and not what might be its value if under better management. We can conceive of no better criterion by which its value can be ascertained, than, first, the value of its structure, superstructure and properties, and then the profits which may enure to its owners in its operation. And xhis we understand to be the basis of assessment in this case. If it be an interstate railroad, as in this case — a part in this State and a part in another — we know of no better plan to fix the taxable value of that portion lying in this State, than to ascertain what proportion the latter bears to the whole. Upon this subject, however, there is great conflict of authority, and great contrariety of judicial reasoning and ruling.
Thus, it is said, a state may impose taxes upon *798 the corporation as an entity existing under ■ its laws, as well as upon the capital stock of the corporation, or its separate corporate property, and the manner in which its value shall be assessed, and the rate of taxation, however arbitrary or capricious, are mere matters of legislative discretion. A tax on a corporation may be proportioned to the income — revenue, as well as to the value of franchise granted, or the property assessed: 18 Wall., 208. In Paine v. Wright, 6 McLean, 395, it is said that a tax can only be just and equal on railroad corporations, by being assessed upon the profits, while the case of the Sangamon & Morgan P. P. Co. v. The County of Morgan, et al. 14 Ill., 163, it is held that the portion of a railroad company which lies within a county is taxable there, and the valuation must be of that specific part of it situated in such county, without reference to the whole road. But how, we ask, is that part of it, if valued as a railroad, to be ascertained except as proportioned to the value of the whole? In the case of The People ex rel. etc., v. Barker, Am. Railway Rep., 149, it is held, that in assessing real property belonging to a railway company, consisting of a strip of land but a few rods in width, upon which the railroad track is located, with the necessary stations, buildings, etc., the land should not be assessed as an isolated piece of property, but as a part of the whole railway, and its value should be estimated in connection with its position and the business and profit derived therefrom. And so in the case of The People ex rel. etc., v. Fredericks et al., 48 Barb., 173, it was held that the *799 real estate of railroad companies should be assessed at its value for the purposes to which it had been adapted, and not as mere farming lands; and in estimating the same, the assessors are not bound to consider it as mere land, and superstructure, isolated from other parts of the road. They are entitled to estimate the value of that part of the real estate within their jurisdiction which contributes to make up a complete and useful railroad extending beyond the town they represent. Judge Davis in delivering this opinion in this case said; “ They, the assessors, were not called upon to assess a farm, but some nine miles of railroad, completed and operated as a railroad; and the question was, what is the fair value under the statute rule, of this estate, thus made into a complete and useful railroad? To sever for the purpose of assessment the buildings and superstructure, and call the residue farming lands, would be a gross absurdity. A farm four rods wide and nine miles long, intersected with public highways, cut up with cattle-guards, culverts and bridges, divided lengthwise by a graded embankment, with ditches on either hand occupying a large share' of its width, would be a poor investment, either for cultivating or grazing purposes, and no assessor would be justified in appraising it at forty dollars an acre, because the adjoining farms, which were useful, such as were of that value. The law as well as good sense, require that the assessors should regard this property precisely what it was, and judge of it accordingly.”
In the case of The State of Illinois v. The Illinois *800 Central R. R. Co. 27 Ill., 64, it is held that in assessing the value of a railroad for purposes of taxation, the enquiry should be what is the property worth, to be used for the purpose for which it was designed, and not for any other purpose to which it might be applied. In such a case, if the property is devoted to the use for which it was designed, and in a condition to produce its maximum income, one very important element for ascertaining its present value, is the amount of its nett profits. This, however, should not be the absolute standard of value. There should be taken in connection with it, the enquiry — what would a prudent man give for the property as a permanent investment, with a view to its present and future income. “When property is thus improved/’ said Judge Breese, in delivering the opinion, “it is manifest that is it more or less valuable, as it yields a greater or less profit in its product and economical use. No prudent purchaser of such property would neglect in the first instance, to look at the income the property yields, so that he might, thereby, judge what profits he might in the future reasonably expect from its investment. To ascertain what he might safely give for the juoperty, no doubt he would and ought prudently to anticipate the future as' well as regard the past; and yet should he give more than the value as indicated by the present income, such enhanced value would be rather speculative than real, depending on a great variety of circumstances and casualties.” We will not multiply citations upon this question. It resolves itself at last into one of practical sense, from *801 which the law of it must be evoked. We had as well talk of assessing a gold mine for taxation by the value of contiguous farming lands, as to assess a railroad by that standard. The law which requires that all property shall be taxed according to its value, would thus be rendered inoperative and nugatory.
In this case, it is said, that the assessor has treated the rolling stock of the road as part of the realty. This does not necessarily follow, however, because he has included it as one of the elements of value. The rolling stock necessarily enters into his estimate of value, and is an indispensable element of it, and so the implements of husbandry make land valuable, but are not a part of the realty. The rolling stock is a part of the railroad, and without it the road as such would be without value. It is a kind • of mixed property, partaking of the character of both realty and personalty — a sort of nondescript whose status has never been defined either by legislative or judicial ruling, in this State. In the case of the Farmers Loan & Trust Co. et al. v. Hendrickson, 25 Barb., 484, the Supreme Court of New York, held that as between mortgagees and judgment creditors of the mortgagors, the rolling stock of a railroad company, such as locomotive engines, passenger, baggage and freight cars, etc., are fixtures, and will pass under a mortgage of the track of a roadway. ' In discussing the question, the Court say: “As a general rule, in order that articles originally personal should be considered as annexed to the freehold so as to become fixtures, they must either be fastened to the -realty, or what is clearly a part of it, or must *802 be placed upon the land with a manifest intent that they shall permanently remain there; and that they shall be in some way peculiarly fitted to something that is actually fastened upon it, and essential if not absolutely necessary to its proper enjoyment. It is not necessary that things should be stationary in one place or position, in order that they should be technically deemed fixtures.” And so it was held also, that the rolling stock of a railroad is a fixture, in Farrer v. Stackpole, 6 Greenl., 157; Palmer v. Forbes, 23 Ill., 300; Pennock v. Coe, 23 How., U. S., 117. “We are all of opinion,” say the Supreme Court of Illinois in Palmer v. Forbes, “that rolling stock, rails, ties, chains, spikes, and all other material brought upon the ground of the company incumbered by the mortgage, and designed to be attached to the realty, should be considered as a part of the realty.” And to the same effect are the cases of the Louisville & New Albany R. R. Co. v. The State, 25 Ind., 177, and Minnesota Co. v. St. Paul Co. 2 Wall.. 644. Following these respectable authorities, we might safely hold, that for the purposes of taxation, the rolling stock of a railroad company may be considered a part of the realty. The Legislature certainly has a right to impress it with the character of realty or personalty, but until it does so, it must be classified according to the doctrines of the common law. We have seen that by the Constitution of this State, all property except such as is exempt, shall be taxed. That it shall be taxed according to its value;- that value to be ascertained in such manner as the Legislature may prescribe. We can *803 not presume' a hiatus in the law, or that the lawgivers have been utterly oblivious of this great source of revenue, and have left it untaxable; that the property of the plaintiff is exempt from this general burthen. The Legislature had not up to the time of this assessment, prescribed the basis or manner of assessing railroad property for taxation, but it is left to be assessed under the general law, “that real property shall be assessed at its market value, on a credit of one and two years, deducting fifteen per cent, in gross.” In this case, the plaintiff’s property has been assessed on its actual value, as railroad property, upon a valuation of its entire road-bed, rolling stock, equipments, engine houses, machine shops, depot grounds and lands, in view of the special uses and purposes to which they were all put and applied, and the profits arising from them as a railroad and appurtenances. It seems to us, if the plaintiff’s property in the county of Sumner were exposed to' sale, that all these elements of value would be essential and indispensable in the estimate of its value, and that they constitute the only safe and just criterion thereof. It results, therefore, in the opinion of the Court, that the assessment of the plaintiff’s property for county taxation in this case, was lawful and proper, and that there is no error in the judgment of the Circuit Court dismissing the petition.
The case involving an assessment of like nature for purposes of state taxation, is resisted on another ground, which is not involved in the case already considered. It is' argued on behalf of the State that the *804 remedy by certiorari does not lie to resist an assessment for state taxes. The Legislature has prescribed a remedy in such case on behalf of the taxpayer, and it is insisted that the remedy thus prescribed is exclusive of all others.
The first section of the act of 1873, c. 44, is in these words: “That in all cases in which an officer, charged by law with the collection of revenue due the State, shall institute any proceeding or take any steps for the collection of the sum alleged or claimed to be due by said officer, from any citizen, the party against whom the proceeding or step is taken shall, if he conceives the same to be unjust or illegal, or against any statute or any clause of the Constitution of the State, pay the same under protest; and upon his making such payment, the officer or collector shall pay such revenue into the state treasury, giving notice at the time of payment to the Comptroller that the same was paid under protest; and the party paying said revenue may, at any time within thirty days after making said payment, and not longer thereafter, sue the said officer having collected said sum, for the recovery thereof, and the same may be tried in any court having jurisdiction of the amount and parties, and if it be determined that the same was wrongfully eollécted as not being due from the said party to the State, for any reason going to the merits of the same, then the court trying the same may certify of record that the same was wrongfully paid, and ought to be refunded; and thereupon the Comptroller shall issue his warrant for the same, which shall be paid in *805 .preference to other claims on the treasury.55 The second section of this act declares this remedy to be exclusive of all others. It will thus be seen that an ample remedy is provided for the citizen who conceives himself wronged by an improper exercise of the taxing power.
But it is argued, on behalf of the plaintiff, that this statute is unconstitutional and void, as it deprives the citizen of the remedy by certiorari, guaranteed by the organic law. . By the tenth section of the sixth article of the Constitution it is provided, “that judges or justices of the inferior courts' of law and equity shall have power in all civil cases to issue writs of certiorari to remove any cause, or the transcript of the record thereof, from any inferior jurisdiction, into such court of law, on sufficient cause, supported by oath or affirmation.55 We are of opinion that, in regard to the taxing power in the State, this statute does not infringe either this or any other constitutional provision. The power to tax is not conferred by the Constitution, but is the incident and the highest attribute of sovereignty. Its limitations are self-imposed by the sovereign, and these alone are to be found in the bills of rights and constitutions vouchsafed to the subject for his protection. No government could exist for a day without this attribute of supereminent sovereignty, and no government could exist for a day if its subjects could resist at pleasure and without restriction, the power to levy taxes. It is the paramount power of all others which guarantees to the subject absolute protection upon the con *806 dition of absolute obedience and promptness in meeting its pecuniary exactions, by which alone it has the power to protect. The government can create its own sources of revenue without restriction, except such as it has imposed upon itself. Its power in this respect is imperial and all-pervading, and in the free states of America it is as unfettered and absolute, to the extent of their territorial jurisdiction, and subject only to the self-imposed restrictions of their own organic laws, as it was in imperial Rome when the “decree went forth from Caesar Augustus that all the world should be taxed.” ' The power to tax involves the power to exist, and the one must be exercised promptly, certainly, and without interruption, in order to secure the other. “The State can not commit suicide.” The remedy provided by the statute is ample, speedy and certain, and the indemnity of the injured citizen is absolutely assured. We have no hesitation in holding that the clause of the Constitution in question has no reference whatever to any litigation growing out of the taxing power in the State, and that the enactment is constitutional and valid.
Affirm the judgment.